# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION NO. 10-53-05** |
| **v.** | : | |
| | : | **CIVIL ACTION NO. 14-2956** |
| **ZACHARY DAVIS** | : | |
| | : | |

## MEMORANDUM

**Rufe, J.**                                                                          **October 11, 2016**

Defendant Zachary Davis pleaded guilty to one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute five hundred grams or more of cocaine and aiding and abetting in violation of 21 U.S.C. § 841 (a)(1), (b)(1)(B) and 18 U.S.C. § 2.  At sentencing, the final Sentencing Guidelines calculations resulted in an offense level of 35 and a criminal history category of II, with a Guidelines range of 188-235 months.  The mandatory statutory minimum sentence was 10 years (120 months).  The Court imposed a downward variance and sentenced Defendant to 156 months of imprisonment.

After an unsuccessful direct appeal, Defendant seeks relief pursuant to 28 U.S.C. § 2255.[1] His counseled amended motion[2] argues that his trial counsel was ineffective for (1) failing to explain that even though Defendant and the government stipulated as to the amount of drugs in

---

[1] The Court appointed new counsel for Defendant for purposes of appeal.  In affirming the conviction and sentence, the Third Circuit, noting that its review was for plain error, held that the plea was voluntary, that a district court is not bound by a stipulation unless the plea agreement so states pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and that to the contrary, Defendant's plea agreement stated that "[t]he defendant may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulations by the parties to this agreement.  No one has promised or guaranteed to the defendant what sentence the Court will impose." *United States v. Davis*, 521 F. App'x 81, 83 (2013) (internal quotation marks omitted).  The Third Circuit also held that this Court addressed those provisions with Defendant at the time of the guilty plea.  *Id.* at 84.

[2] Defendant filed the initial petition *pro se*, and the Court appointed counsel to represent Mr. Davis. Counsel filed an amended motion [Doc. No. 421], and the Court dismissed as moot the initial petition.  The Court therefore will address only those issues raised in the amended motion.

the conspiracy that were chargeable to Mr. Davis, the Court could hold him responsible for a higher amount and (2) failing to investigate properly and argue the issue of gun possession that resulted in a two-level firearm enhancement.

## I.      Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[3] Relief under AEDPA is extraordinary and "generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[4]   Claims of ineffective assistance of trial and appellate counsel are properly raised in a § 2255 motion.[5]

---

[3] 28 U.S.C. § 2255(a).

[4] *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

[5] *Massaro v. United States*, 538 U.S. 500, 504 (2003)  ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

2

## II.     Discussion

### A.     *Waiver*

Defendant pleaded guilty to both charges against him pursuant to a written guilty plea. The plea agreement included a comprehensive waiver of rights to appeal or collateral attack the conviction or sentence, limiting Defendant's ability to raise any such challenges unless the sentence exceeded the statutory maximum, unreasonably exceeded the Guidelines range, or the sentencing judge "erroneously departed upward pursuant to the Sentencing Guidelines." However, the waiver was "not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived."[6]  The plea agreement also provided that "[a]t the time of sentencing, the government will . . . [m]ake whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution and other matters which the government deems appropriate."[7]  At the change of plea hearing on February 28, 2011, Defendant agreed to the terms of the written plea agreement, including the waiver.[8]

The government argues that the § 2255 motion should be dismissed because Defendant waived his right to collaterally attack his sentence.  In determining the validity of  a waiver, the Court considers "(1) whether the waiver of the right to appeal [the] sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver . . .; and (3) whether enforcing the waiver would work a miscarriage

---

[6] Plea Agreement at ¶ 9 [Doc. No. 189].

[7] Plea Agreement at ¶ 5a.

[8] Tr. 2/28/11 at 9-10.  The Court also reviewed this waiver with Defendant.  Tr. 2/28/11 at 24-26.

of justice."[9]  Here, the written agreement and the lengthy plea colloquy establish that the waiver

was knowing and voluntary.[10]  The Court's determination that the plea agreement in general, and

the appellate waiver provisions in particular, were entered into knowingly and voluntarily was

based on its assessment of Defendant's responses to the Court's inquiries at the hearing as well

as his averments in the agreement.[11]

No exceptions to the waiver apply.  The government did not appeal the sentence and

there is no contention that (1) the sentence exceeds the statutory maximums; (2) the Court

erroneously departed upward pursuant to the sentencing guidelines; or (3) the Court imposed an

unreasonable sentence.  That leaves the question of whether enforcement of the waiver would

result in a miscarriage of justice.

A miscarriage of justice may result in limited situations, such as where "constitutionally

deficient lawyering prevented [the defendant] from understanding his plea, where the defendant

should have been permitted to withdraw his guilty plea, or where the waiver itself was the

product of alleged ineffective assistance of counsel."[12]  Where a defendant claims ineffectiveness

tainted the plea agreement, a waiver does not become unenforceable unless the record

---

[9] *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (citation and quotations omitted).

[10] *See United States v. Mabry*, 536 F.3d 231, 237–38 (3d Cir. 2008) ("Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it.").

[11] *See United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (appeal waiver knowing and voluntary where court complied with Rule 11 of Federal Rule of Criminal Procedure requiring that the Court address defendant and determine he understands the terms of the provision of a plea agreement waiving the right to appeal or collaterally attack the sentence).

[12] *United States v. Spivey*, No. CR 10-59-03, 2016 WL 1639013, at *3 (E.D. Pa. Apr. 25, 2016) (internal quotation marks and citations omitted).

demonstrates "the claim that the waiver was the result of ineffective assistance of counsel [is] meritorious."[13]   The Court will examine Defendant's ineffective assistance claims to determine whether circumstances that would result in manifest injustice are present here.

### B.   Ineffective Assistance of Counsel

The Sixth Amendment guarantees to each criminal defendant the effective assistance of counsel.  Whether counsel was ineffective is evaluated under the familiar guidelines of *Strickland v. Washington*. To prevail on an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[14]

"A defendant may withdraw a guilty plea based on ineffective counsel only if (1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms, [and that (2)] he suffered sufficient prejudice from his counsel's errors."[15]

### 1. Failure to advise that the Court could reject the stipulation as to drug quantity

At the change-of-plea hearing, Defendant's retained attorney, Fortunato Perri, stated that the government and the defense agreed that the "relevant conduct with respect to the drug

---

[13] *United States v. Akbar*, 181 F. App'x 283, 286-87 (3d Cir. 2006) (internal quotation omitted).

[14] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[15] *United States v. Johnson*, No. 14-3540, 2015 WL 1321515, at * 4 (3d Cir. Mar. 25, 2015) (internal quotation marks omitted; alteration in original).

quantity was between five and fifteen kilograms."[16] The Assistant United States Attorney, David

Axelrod, agreed with this representation stating, "I believe the conduct is between five and

fifteen kilograms for purposes of calculating the sentencing guidelines."[17]  The Court noted that

this stipulation was "not in the plea agreement"[18] and the following discussion ensued:

| | |
|---|---|
| Mr. Perri: | No, [it's] not, I wanted to discuss that in open court just so it is clear. |
| Mr. Axelrod: | And Mr. Perri is absolutely correct, Your Honor. |
| Mr. Perri: | Yes. |
| Mr. Axelrod: | The stipulation wasn't agreed to at the time the guilty plea agreement was passed to the defendant, the defendant agreed to it. Mr. Perri and I have discussed that conduct and have agreed and I represented that I believe the conduct is between five and fifteen kilograms for purposes of calculating the sentencing guidelines. |
| Mr. Perri: | That is the conversation I had with Mr. Davis, just so the record is clear and Mr. Davis will acknowledge that we had those discussions. |
| The Court: | All right.  And because I don't think when the presentence report is prepared, counsel, they have access to the actual transcript and it doesn't appear in writing, wouldn't it be best to put this in writing? |
| Mr. Axelrod: | Your Honor, I've actually had conversations with the agent and with the probation officer, I think it is Mark Hassinger, who will be preparing it and I'm going to pass the information along to him so that he knows that as well. |
| Mr. Perri: | I will speak to Mr. Hassinger as well, Your Honor. |

---

[16] Tr. 2/28/11 at 11.

[17] Tr. 2/28/11 at 11.

[18] Tr. 2/28/11 at 11.

The Court:       All right.

The Court:       Okay.  Thank you.  All right.  So, do you agree with that?

The Defendant: Yes, Your Honor.[19]

After discussion about mandatory penalties and other issues, the following exchange occurred:

The Court:       In other words, today because I don't have any of the information
                 I'm going to need except what I'm learning from this plea, *I will
                 not be able to determine what your sentence will be, you
                 understand that, correct?*

The Defendant:  Correct, Your Honor.

The Court:       Even if the government and the defense have agreements, such as
                 the appellate waiver that is included in your plea agreement, *such
                 as stipulations*, even if they make joint motions, it doesn't mean
                 that the Court has to approve it, do you understand that?

The Defendant:  Yes.[20]

At the October 14, 2011 sentencing hearing, counsel for the defense (Mr. Perri and

Carson Morris) objected to the Presentence Investigation Report, which calculated a base level

offense of 36 (based on Probation Officer Mark Hassinger's finding of seventy kilograms)

instead of 32 (based on the stipulation of five to fifteen kilograms).  The government agreed with

this objection.[21]  The Court, based on its knowledge of the case and cognizant both of the

stipulation of the parties and the need to ensure that the sentence accurately reflected Mr. Davis's

responsibility individually and in comparison with similarly-situated co-defendants, found that

---

[19] Tr. 2/28/11 at 11-12.

[20] Tr. 2/28/11 at 19 (emphasis added).

[21] Tr. 10/14/11 at 5.

seventy kilograms was properly attributed to Mr. Davis. With regard to the stipulation, the Court

stated:

> The Court: I have a bigger problem than finding that he is responsible for
> seventy kilograms, and that is the basis of the plea that I accepted,
> because there is a contractual issue here that causes me pause.
> And yet, my record needs to be accurate and based on facts, and I
> can't find different facts in each case and I am not going to turn the
> law of conspiracy on its ear to accommodate a stipulation.
> And there is also an understanding in the plea agreement that the
> Court need not accept a stipulation but I would like to be fair about
> this. That stipulation obviously had something to do with Mr.
> Davis giving up his rights to a trial.
> So, in terms of what I decide to do today, whether he is held
> responsible or not, I will never be able to accept the premise that
> the defense proffers in this objection that he wasn't responsible for
> seventy kilograms. I believe he is.
> I believe the top activity, top level activity that he was engaged in
> makes him so. Whether or not I assess that against him because of
> the plea agreement and its terms, is another matter entirely.[22]

The Court then heard argument on the legal issue of a factual finding that differed from

the stipulation, which led to the following discussion:

> The Court: Well, contract principles aside, there is a constitutional issue here,
> and that is someone gave up their right to a trial based on an
> understanding.

> Mr. Morris: Exactly, Your Honor.

> The Court: And I want to support the ability of someone to make a reasoned,
> knowing, intelligent and voluntary decision to do that based on
> what they know and based on their acceptance of what they know.
> So, I am not into usurping anyone's constitutional right to do that
> and be aware exactly of what they are doing. I found that he was
> aware. So, I am protective of that.

---

[22] Tr. 10/14/11 at 16-17.

Mr. Perri:      Your Honor, may I make a suggestion?

The Court:      Of course.

Mr. Perri:      In listening to the discussion of counsel and the Court's rationale, I certainly understand the position the Court has taken and we are at kind of a difficult crossroads right now with respect to the issue of whether or not, you know, the stipulation is not part of the agreement that Mr. Davis entered into, then essentially he is probably sitting there thinking I just gave up my right to have a trial and--

The Court:      That's why I addressed it.  He has to be thinking that.

Mr. Perri:      Right, and I certainly appreciate that.  The Court certainly and, again, I don't know where the Court is as far as ultimate resolutions of this sentencing hearing today, but the Court certainly has some leeway in terms of sentencing.
                Even if the Court were to make certain findings with respect to objections that are raised and even agreements with the government, the Court could vary in some way based on Mr. Davis'[s] role in the offense comparable to [other defendants], and if the Court were to arrive at a similar conclusion after varying, then that may avoid much of the problem here today.

The Court:      Well, it may.  But, it has to end up that way for us to predict and we can't do that.  It is a reasonable approach and believe me I have thought of it.

Mr. Axelrod:    It is.

The Court:      But, on the other hand, knowing the Court's obligations to properly calculate the advisory sentencing guideline range we are going through the machinations of doing so--

Mr. Perri:      Right.

The Court:      --as required, and I have to get this right.  And it not only is for the defendant in front of me, it is for every defendant in this particular conspiracy that is yet to be sentenced and the ones I already did.

9

Mr. Perri:      Sure.

The Court:      So, it is back to consistency and perhaps [parity] that I am trying to also achieve, and that is the sentencing factors.  But, I need to get this right for Mr. Davis.

Mr. Perri:      I understand.[23]

Mr. Axelrod then stated that the guilty plea was not in doubt, as paragraph seven of the agreement stated that Defendant "may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulation by the parties in this agreement."[24]  Mr. Axelrod also noted that a decision about the amount would not affect sentencings that had already occurred, and it would be speculation as to whether a similar argument would be raised going forward.[25]  Mr. Morris stated that the stipulation was carefully arrived at and that when Mr. Davis "made that decision[,] that waiver, which was a difficult one for him to make in terms of waiving his trial rights, he did so at least with our understanding between the government and our understanding of the governing law with all confidence on our behalf."[26]  The Court then heard from Mr. Hassinger, who stated that he did not know how the five to fifteen kilogram range was arrived at, and explained his basis for attributing seventy kilograms to Mr. Davis.[27]  The Court held that the stipulation was not dispositive and that "Mr. Davis was thoroughly colloquied by this Court and signed a written plea agreement after consultation with counsel,

---

[23] 10/14/11 Tr. at 19-22.

[24] 10/14/11 Tr. at 22.

[25] 10/14/11 Tr. at 23.

[26] 10/14/11 Tr. at 25.

[27] 10/14/11 Tr. at 26-27.

which was reviewed on the record that said he understood the Court wasn't obligated" to accept the stipulation.[28]

In the amended motion, Defendant argues that his trial counsel was ineffective for failing to advise him that despite the parties' stipulation as to the amount of drugs attributable to Defendants' actions, the Court could reject that agreement and hold Defendant responsible for a higher amount, which would result in an increased sentence.  In evaluating this argument, the Court accepts Defendant's statement that counsel did not so advise him.  However, "defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion."[29]  The lengthy plea colloquy in this case establishes that the Court thoroughly advised Defendant that stipulations were not binding upon the Court.  The Court independently determined that seventy kilograms was properly attributed to Defendant despite the parties' stipulation, and Defendant was on notice that this was a possible result. The Court understands, and understood at the time of sentencing, that Defendant had expectations as to the drug quantity for which he would be held responsible, but Defendant also was made fully aware that the stipulation was not binding upon the Court, and the Court made its determination based upon the full knowledge of the case.  Even if counsel had failed to advise Defendant of this possibility, either before or after the guilty plea, no prejudice has been shown.

---

[28] 10/14/11 Tr. at 27-28.

[29] *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

11

2. Failure to advise the Court as to why Defendant used a firearm

At sentencing, defense counsel objected to the firearm enhancement under § 2D1.1(b)(1) of the Guidelines, which provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed."[30]  Defense counsel noted that the only factual basis had been provided by the government and the probation office, to the effect that "Mr. Davis accused of firing a weapon at some people that were in front of who he thought had stolen marijuana from one of the co-conspirator's father." [31]  Counsel argued that the incident was not "in relation to the criminal activity underlying the condition of conspiracy,"[32] and that therefore the enhancement should not be applied.

The government disagreed with Defendant's objection, and argued that intercepted telephone calls "indicated that Zach Davis used the gun to fire at this car, and it was done because the men in the conspiracy suspected those were the same people who had been burglarizing this clubhouse" where the drug-related activities occurred,[33] and that his counsel failed to investigate the actual circumstances, which would have shown that the use of the firearm had no relation to the cocaine conspiracy.

---

[30] U.S.S.G. § 2D1.1(b)(1).  The application note states that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."  U.S.S.G. § 2D1.1(D)(11)(A) (2011).

[31] 10/14/11 Tr. at 29.  Counsel also noted pending criminal charges involving the use of the firearm.

[32] 10/14/11 Tr. at 29-30.

[33] 10/14/11 Tr. at 33.

The Court determined that because "the application note . . . says the adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the events," the objection must be overruled as Defendant had not shown that "the gun wasn't there, used and available for the purposes of protecting his turf."[34]

Defendant now explains that he fired his gun into the air to scare off thieves who were trying to remove the custom chrome wheel rims from his car, and that the incident had nothing to do with the drug activities.  He therefore argues that he was prejudiced by counsel's failure to investigate and inform the Court of the true nature of the event.  However, even if counsel had explained the circumstances set forth by Defendant, there is no reasonable probability that the Court would not have applied the enhancement.  The relevant issue for application of the enhancement is possession of the firearm – which is undisputed.  That Defendant used it on one occasion to discourage potential car thieves in no way means that the "gun wasn't there, used and available for the purposes of protecting his turf," as the Court found.[35]  The Court's application of the enhancement was not based solely on why it was fired on a particular occasion but on the fact that Defendant had a gun, which he was willing to fire, at the place where the cocaine was delivered, cut, and sold.  Under these circumstances, any failings of counsel would not have affected Defendant's sentence, and no prejudice has been shown.

---

[34] 10/14/11 Tr. at 31, 33.

[35] 10/14/11 Tr. at 33.

**IV.     CONCLUSION**

Upon careful consideration of the parties' submissions and the record in this case, the

Court concludes that there has been no showing of prejudice to Defendant or a miscarriage of

justice.  The motion will be denied without a hearing.[36] Because Defendant has not made a

substantial showing of the denial of a constitutional right, a certificate of appealability shall not

issue.[37] An order will be entered.

---

[36]      "In evaluating a federal habeas petition, a District Court must hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Kenley*, 440 F. App'x 78, 80 (3d Cir. 2011).  If the record as a whole "conclusively show[s] that the prisoner is entitled to no relief," a court is not required to hold an evidentiary hearing.  *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988) (quoting *Gov't of the V.I. v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984)) (internal quotation marks omitted).  Here, the Court has assumed the truth of the facts set forth in Defendant's motion, finds that the record as a whole conclusively establishes that Defendant is entitled to no relief.

[37] 28 U.S.C. § 2253(c)(2*)*; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

14